TOWN OF CONCORD, MASSACHU-SETTS and Town of Wellesley, Massachusetts, Plaintiffs,

v.

BOSTON EDISON COMPANY, Defendant.

Civ. A. No. 87–1881–C.

United States District Court, D. Massachusetts.

Jan. 5, 1988.

Charles F. Wheatley, Jr., Wheatley & Wollesen, Annapolis, Md., Woodrow D. Wolleren, Vienna, Va., Arthur L. Stevenson (Town Counsel), Goodwin, Proctor & Hoar, Boston, Mass., Albert S. Robinson (Town Counsel), Grindle, Robinson & Kertzman, Wellesley, Mass., for plaintiffs.

William G. Meserve, William L. Patton, Ropes and Gray, John Desmond, Wayne R. Frigard, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action is before the Court on defendant's motion to dismiss Count II of the plaintiffs' complaint. The sole issue for decision is whether electricity is a "commodity" within the meaning of Section 2(a) of the Clayton Act, 15 U.S.C. § 13(a), also referred to as the Robinson–Patman Act.

The plaintiffs are municipal corporations which own and operate electric distribution systems and engage in the distribution of electric power at retail. The defendant is a vertically integrated power company which generates, transmits and sells electric power at wholesale and at retail. According to the allegations of the complaint, Boston Edison ("Edison") supplies more than 95% of the plaintiffs' power requirements. The electricity sold to plaintiffs by Edison is resold to consumers at retail.

In Count II, the plaintiffs have alleged that Edison has violated the Robinson–Patman Act by unlawfully charging them a higher price for electricity than it charges its retail customers. The Robinson–Patman Act makes it unlawful for any person engaged in commerce "to discriminate in price between different purchasers of commodities of like grade and quality ..." 15 U.S.C. § 13(a). Since the Act's prohibition against price discrimination applies only to sales of "commodities," the plaintiffs' cause of action must stand or fall on whether electricity is included in that category.

Congress has not defined the term "commodity" as used in the Act and the Supreme Court has not had the opportunity to consider whether electricity may be a commodity subject to the Act's prohibition against price discrimination. However, several other courts have considered the issue with varying results. *See City of Newark v. Delmarva Power & Light Co.,* 467 F.Supp. 763, 774 (D.Del.1979) (electricity is not a commodity); *City of Groton v. Connecticut Power & Light Co.,* 497 F.Supp. 1040, 1052 n. 14 (D.Conn.1980), aff'd in part and rev'd on other grounds, 662 F.2d 921 (2d Cir.1981) (same). *Contra City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. 1258, 1282 (S.D.Fla. 1980) (electricity is a commodity); *Borough of Ellwood City v. Pennsylvania Power Co.,* 570 F.Supp. 553, 561 (W.D.Pa.1983) (same); *City of Kirkwood v. Union Electric Co.,* 671 F.2d 1173, 1182 (8th Cir.1982) (same). For the reasons stated below, this Court follows those decisions recognizing that electricity is a commodity subject to the pricing restrictions of the Robinson–Patman Act.

The term "commodity" is commonly used to refer to goods, merchandise, wares, supplies and other items bought and sold in the marketplace. *Baum v. Investors Diversified Services Inc.,* 409 F.2d 872, 875 (7th Cir.1969). The term does not include services even if tangible products are transferred incidentally to the provision of services. *Tri–State Broadcasting Co. v. United Press International, Inc.,* 369 F.2d 268, 270 (5th Cir.1966); *Advanced Office Systems, Inc. v. Accounting Systems Co.,* 442 F.Supp. 418, 423 (D.S.C.1977). Nor does the term encompass intangibles such as contract rights whether or not such rights are represented by a tangible item such as theater tickets or stock certificates. *Kennedy Theater Ticket Service v. Ticketron, Inc.,* 342 F.Supp. 922, 926 (E.D.Pa. 1972); *Baum v. Investors Diversified Services, Inc.,* 409 F.2d at 876.

The problem in determining whether electricity is a commodity under the Robinson–Patman Act arises because electricity lacks a typical characteristic of items traditionally placed in that category. Unlike items which are usually thought of as commodities, such as machinery or supplies,

electricity is not an obviously tangible item. In all other respects, however, electricity is not significantly different from other items deemed commodities subject to the price discrimination prohibitions of the antitrust laws. Like the more traditional comodities, electrical energy is a thing bought and sold in the market place. It may be measured, stored and even stolen. *See People v. Menagas,* 367 Ill. 330, 11 N.E.2d 403, 407 (1937). More importantly, electricity is manufactured from other forms of energy and then distributed from the manufacturer to intermediaries like the plaintiffs or to the ultimate consumers at retail. Like other commodities, electricity is useful to purchasers solely because of its physical properties and not because it represents any underlying contractual right or other intangible. *See generally City of Gainesville v. Florida Power & Light Co.,* 488 F.Supp. at 1281.

The fact that electricity is not an obviously tangible product is not sufficient to preclude its definition as a commodity subject to the Robinson–Patman Act. First, electricity is not a completely intangible product. As the Eighth Circuit Court of Appeals noted in *City of Kirkwood v. Union Electric Co.,* "[e]lectric power can be felt if not touched." 671 F.2d at 1181. Moreover, the type of intangibles which are traditionally excluded from the Robinson-Patman Act are contract rights which constitute property wholly devoid of any physical properties at all. As noted above, electricity is useful to consumers precisely because of its physical properties.

The Court rejects Boston Edison's argument that the provision of electricity is predominantly a service as compared to a movable and tangible product. Although the average consumer of electricity might believe she is paying for a service rather than purchasing a product from Edison, this fact is not controlling in the determination of whether electricity is a commodity within the Act. Edison manufactures electricity and sells it to consumers at retail and at wholesale. The primary purpose of a consumer who deals with Edison is to obtain this product, electricity. To hold that these activities, manufacturing and

selling, constitute a service would cause the exception to swallow the rule laid down by the Robinson–Patman Act. The manufacture and sale of electricity is no more a service than the manufacture and sale of widgets.

I am also persuaded that the term "commodity" encompasses electricity because of the similarities in the distribution system of electricity and the distribution systems which prompted legislative concern over price discrimination. Electricity is a manufactured product distributed at multiple levels from supplier to retail. As noted by the Court in *City of Gainesville v. Florida Power & Light Co.,* the "characteristics of the manufacture and distribution of electricity track well the Congressional concern with possible discriminatory pricing in other manufactured products." 488 F.Supp. at 1282. A decision that electricity is a "commodity" as that term is used in the Robinson–Patman Act would further the Congressional purpose to protect small retailers from being forced out of business by unjustified price discrimination. *Id.* at 1281.

Edison has also pointed to the circumstances surrounding the enactment of the Robinson–Patman Act as support for its contention that Congress did not intend to encompass electricity within the term "commodity." In 1935, the year before the Robinson–Patman Act was enacted, Congress had amended the Federal Power Act to provide for review by the Federal Power Commission (now the Federal Energy Regulatory Commission) of all rates charged for the transmission or sale of electricity subject to its jurisdiction. Edison argues that this Congressional action indicates that the legislature intended the Federal Power Act to govern exclusively questions concerning alleged discrimination in electric rates.

I find Edison's reasoning unpersuasive. The Supreme Court has indicated that the Federal Power Act does not preempt scrutiny of a power company's activities under the antitrust laws. *Otter Tail Power Co. v. United States,* 410 U.S. 366, 374, 93 S.Ct. 1022, 1028, 35 L.Ed.2d 359 (1972). In

*Otter Tail,* the Court specifically noted that the Federal Power Act was not intended to insulate power companies from antitrust liability. *Id.* This is true even though the regulatory commission in charge of enforcing the Federal Power Act is entitled to consider antitrust considerations in making its decision under the act. *See Gulf States Utilities Co. v. FPC,* 411 U.S. 747, 760, 93 S.Ct. 1870, 1878, 36 L.Ed. 2d 635 (1973). Thus, there is nothing inconsistent in the Congressional act which subjects prices approved by a federal regulatory agency to further scrutiny under the antitrust laws.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

Defendant's motion to dismiss Count II is denied.